UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | ) <br> ) <br> ) |
| v. | ) <br> ) No. 05-10037-GAO |
| GRANT BOYD, <br>     Defendant. | ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

I.  INTRODUCTION

The defendant comes before this Court in a two count indictment alleging that on December 31, 2004, he possessed methamphetamine with the intent to distribute.  The second count seeks to forfeit any property seized in connection with the offense.

Grant Boyd received a consensual phone call on December 29, 2004 from a confidential informant (CI) relating to the purchase of methamphetamine.  The phone number the CI called had an outgoing message.  The name identified on the outgoing message of the phone called by the CI was "Mark Martin."  It is unclear whether the CI knew that Mark Martin was an alias for Grant Boyd but what is clear is that the CI knew the defendant's true identity, which was Grant Boyd.

Law enforcement questioned persons working at the Nine Zero Hotel in Boston about Mark Martin.  The employees of the hotel informed law enforcement that Mr. Martin was expecting a package to arrive between 9:00am and 12:00pm on December 30, 2004.    Law enforcement set up surveillance and observed Grant Boyd enter hotel room #501, which was registered to Mark Martin.

The employees of the hotel opined to law enforcement that Mr. Boyd was nervous when he asked about the package.  The surveillance set up by law enforcement confirmed however that contrary to their belief, no package ever arrived on December 30, 2004.

On December 30, 2004, the CI made arrangements to meet with Grant Boyd to obtain one ounce of methamphetamine. The CI and Mr. Boyd met. Law enforcement lost surveillance. Later on, law enforcement saw the CI exit the hotel. The CI met with law enforcement officers and provided them with a substance that appeared to be methamphetamine. The CI also observed in Mr. Boyd's room (#501) a smoking pipe, scales, a person using a computer, but no methamphetamine or any other controlled substances. Later, after the CI left the room and before he departed from Mr. Boyd's company, he was allegedly given 22 grams of methamphetamine.

On December 31, 2004, law enforcement personnel identified the package they were looking for addressed to Mark Martin. Law enforcement requested Fed Ex to open the package in their presence. The defense believes that law enforcement targeted the package and instructed Fed Ex employees to open it. The package was resealed by law enforcement. It remained in law enforcement's exclusive custody and control. Law enforcement delivered the package to Room 501 at 11:37 a.m. At 11:53 a.m., when Mr. Boyd left the room he was arrested with the package in his possession. The evidence in the package is the basis of this charge and a result of an illegal search and seizure. There are not many cases that run more afoul of the Fourth Amendment than the facts presented here.

## II.  ARGUMENT

A.  THE SEARCH OF THE FED EX PACKAGE WAS ILLEGAL

In *Burdeau v. McDowell,* 256 U.S. 465, 475 (1921), the Supreme Court held that the Fourth Amendment is a limitation upon the government only and that consequently evidence secured by private illegal searches need not be excluded from a criminal trial. Although this is still the law today, the issue of precisely what it takes to put a search outside the "private" category is frequently litigated in a wide variety of settings. In this case, Mr. Boyd is litigating the joint participation of the Boston Police Department and Fed Ex employees. It is obvious that but for the direction, isolation, involvement, and commands of the Boston Police Department, Fed Ex employees would have never opened the package at issue in this case.

It should not be assumed from *Burdeau, supra,* that the Fourth Amendment is inapplicable whenever the physical act of searching is carried out by a private person or whenever the testimony at the criminal trial concerning what was found is to come from a private person. To take the latter situation first, quite clearly a police search is not turned into a private search by the mere fact that a private person is a bystander in a position to see what the police have uncovered. *Copley v. Commonwealth*, 219 Ky. 498, 293 S.W. 981 (1927); *Cochran v. State*, 191 Miss. 273, 2 So.2d 822 (1941); *State v. Hunt*, 280 S.W.2d 37 (Mo.1955).

Even when the physical act of searching is by a private person, it may generally be said that the search is still governmental action if it was instigated by the authorities or the authorities have participated in the search in some way. The participation need not be in the very act of searching. Instructive is *United States v. Reed*, 15 F.3d 928 (9th Cir.1994), where two officers summoned by a motel manager stood by in the doorway as the manager searched the room of a drug suspect. In response to the government's claim that "mere presence" of the police was not enough to make this other than a private search, the court responded that the officers' "presence was more than 'incidental,' " as they "served a vital purpose: * * * lookouts." *Id*. at 932. In the reverse situation, where the physical act of searching is by a police officer, but at the request of a private person, this is likewise governmental action. See *People v. Adams*, 53 N.Y.2d 1, 439 N.Y.S.2d 877, 422 N.E.2d 537 (1981).

Quite clearly, a search is not private in nature if it has been ordered or requested by a government official. In this case, the search was requested by the Boston Police. Cases have held that where a customs agent asked an airline transportation agent to open a package placed with the airline for shipment, the 4th Amendment applied. See *Corngold v. United States*, 367 F.2d 1, 3-4 (9th Cir.1966). An example of an analogous illegal search is in that postal authorities may be authorized to open packages to see if the proper rate of postage was paid, it does not follow that it is lawful for those authorities to open a package upon request of a state police officer for the purpose of finding evidence of crime. See *Commonwealth v. Dembo*, 451 Pa. 1, 301 A.2d 689 (1973). Likewise, although a shipper may have authority pursuant to the

contract of carriage to open a package to see that the proper rate was charged, this does not mean that the shipper's employees may lawfully open a package placed with the shipper at the instigation of a customs agent who is seeking evidence of criminal conduct. THIS IS EXACTLY THE SCENARIO WE HAVE HERE except that it was Fed Ex employees following orders of the Boston Police.

In *Corngold v. United States*, *supra* and *United States v. Souza*, 223 F.3d 1197 (10th Cir.2000), both Courts held that the search of packages without a warrant was illegal. In *Souza,* 223 F.3d at 1202, the Court stated that:

> While companies such as UPS have legitimate reasons to search packages independent of any motivation to assist police," here search was governmental, as officers who had witnessed drug dog alert to package twice encouraged UPS clerk to open package and then assisted her in doing so.

The fact patterns in the above two cases closely resemble the type of search we have in this case.

A search will also be deemed subject to Fourth Amendment restrictions if it is a "joint endeavor," see *Corngold* at 6, (involving both a private person and a government official), as where a detective and a victim of a theft together enter a suspect's apartment to retrieve the stolen goods. See *State v. Scrotsky*, 39 N.J. 410, 189 A.2d 23 (1963); *People v. Aguilar*, 897 P.2d 84 (Colo.1995) (governmental search where officer and tow truck operator "were acting together in determining the existence of anything suspicious" in impounded vehicle).

In this case, there was no independent motivation of the Fed Ex employee to open the package. In *United States v. Smythe*, 84 F.3d 1240, 1242-43 (10th Cir.1996) the Tenth Circuit upheld a search where the bus station manager called police, who witnessed his opening of suspicious package, and manager testified "the decision to open the package was entirely his" and "that he would have opened the package regardless of whether the police responded to his call," this a private search; manager's actions had an independent motivation, i.e., "his concern for the passengers on the bus," and police "need not discourage private citizens from doing that

which is not unlawful." See *United States v. Leffall*, 82 F.3d 343, 348-49 (10th Cir.1996) (where air freight employee of airline had a police officer come and witness the opening of a suspicious package, this a private search, as an employee "acted to pursue his employer's interests to deter traffic in illegal substances and contraband," and officer was present "merely as a witness" and "need not restrain or discourage private citizens from doing that which is not unlawful"). The facts of this case to do not draw any parallels to the enumerated exceptions.

Other Circuits have suppressed evidence when the motivation by the private person was to assist police or the police disclosed to the private person why they wanted the package searched. See *United States v. Reed*, 15 F.3d 928, 931-32 (9th Cir. 1994) (invalidating a search of a room by a hotel clerk, while the police waited outside the room door, when the police acquiesced in the search and the clerk's motive was to assist in a narcotics investigation).

The First Circuit has also suppressed evidence and only carved out limited exceptions. In *United States v. Edwards,* 602 F.2d 458 (1st Cir.1979) the First Circuit upheld a warrantless search by a private airline employee due to a bomb concern. In *Edwards,* the First Circuit detected exigent circumstances adequate to justify warrantless entry where "government agents could not have obtained a search warrant for [defendants'] home" earlier, *id.* at 468, and "legitimately could fear that [defendants] had discovered their surveillance and would destroy the [evidence] before a search [warrant] could be obtained." *Id.* at 469.

In contrast, the First Circuit in *United States v. Curzi* 867 F.2d 36, 43 (1st Cir.,1989) suppressed the evidence where the FBI as in this case, set the timetable. There was no evidence to indicate that Boyd or any other occupant of the room had discovered the surveillance. The agents could have obtained an anticipatory search warrant once the package was delivered without opening it.

6

B.      THIS COURT SHOULD NOT SANCTION THE SLOPPY AND ILLEGAL POLICE WORK OF THE BOSTON POLICE DEPARTMENT

The United States Attorney has chosen to prosecute the defendant, Grant Boyd, for an offense that was almost exclusively investigated and prepared entirely by the Boston Police Department, and apparently presented to federal prosecutors after Boston Police had arrested Mr. Boyd and searched his hotel room. While the federal government obviously has a right to bring federal charges in areas in which federal and state authorities have concurrent jurisdiction, and to rely entirely on the professional work of the Boston Police rather than federal law enforcement agencies, in the instant case there were serious problems. For example: There are very few reports or notes prepared by the police, whose work the government principally relies on. The entire interaction with the informant and Fed Ex is not documented anywhere. The defense has very little in investigative reports in this case.

In *United States v. Dessesaure* 314 F.Supp.2d 81, 82 -83 (D.Mass., 2004), a brother bench officer in this courthouse suppressed evidence obtained as a result of an illegal search. Judge Gertner was highly critical of the performance of the Boston Police. In that case, the police conducted an illegal entry and used the fruits of that entry, in support of the affidavit. In this case, the police used the fruits of the illegal search of the package to achieve the same results, which in turn, morphed the same Constitutional violations. This Court should be mindful of current performance criticisms by other judges in this District. In this case, but for the illegal search of the package, there is no basis to obtain a search warrant.

C.      THE INDEPENDENT SOURCE RULE IS NOT APPLICABLE

In *Segura v. United States,* 468 U.S. 796 (1984), there was no question that officers illegally entered private premises, and remained there while a warrant was obtained. And there, the officers arguably did nothing but wait. They did not search, or make observations that then became part of the affidavit. The only question was whether the Court should suppress evidence subsequently discovered at those premises when executing a search warrant (not evidence that they had observed while waiting for the warrant) obtained on the basis of information wholly

7

unconnected with the illegal entry. The Court concluded that evidence pursuant to the warrant had been obtained through an "independent source." *Id*. at 813-16.

The "independent source" rule was intended to put the police "in the same, not a worse, position than they would have been if no police error or misconduct had occurred." *Nix v. Williams,* 467 U.S. 431, 443 (1984). Thus, the Court concluded that "[w]hen the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in the absence of any error or violation." "Inevitable discovery" is a related concept, assuming that the evidence initially obtained illegally would have been obtained through "independent" and lawful sources. *Murray v. United States,* 487 U.S. 533, 549 (1988).

In *Murray v. United States,* 487 U.S. 533 (1988), the Court dealt with a related question-- where the officers initially observed criminal evidence during an illegal entry, and then seized the same evidence during a search pursuant to a warrant. Federal officers entered a warehouse, after surveilling the defendant driving a tractor-trailer rig out of it, found to contain marijuana. They saw bales of marijuana in plain view, left and prepared a search warrant neither mentioning the prior illegal entry nor the observations during it. When they returned, they seized the same bales they had observed. Again, there was no question that the first search was illegal. Nor was there any question that the search warrant affidavit, which did not refer to any tainted sources, established probable cause. The only question was:

> whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.

487 U.S. at 542.

Put otherwise, would the officers have bothered getting a warrant if they had come up with nothing on their initial illegal entry? <u>If they would not have, if they were simply searching first to determine whether the warrant was worth their while, the fruits of the warrant search</u>

8

would be suppressed. The Court remanded the case to the district court to make this determination. Likewise, in *United States v. Silvestri,* 787 F.2d 736 (1st Cir.1986), decided after *Segura* and before *Murray,* the Court agreed that the police officers had unlawfully searched a residence and discovered large quantities of drugs in the garage. Two other officers, <u>who were not involved in the unlawful search</u>, prepared the search warrant affidavit and application without any knowledge of the illegal search. They found the same drugs. Asking whether the legal means were "truly independent" of the illegal, and the discovery of the contraband truly "inevitable, the Court declined to suppress the evidence." While the Court did not ask the question the Supreme Court asked in *Murray*--would the officers have sought a search warrant if the illegal search had come up empty--the findings arguably cover that contingency. *Id.* at 741-46.

Since there is absolutely no question that the Boston Police officers here had no right to search the Fed Ex package and no question that the search warrant affidavit reflected tainted observations, the only issue is remedy--what flows from the illegal search. Should the police be rewarded for cheating? Should the illegal evidence be used in this case to enhance Mr. Boyd's exposure to a mandatory minimum of greater than 50 grams? The fair response is no.

D.   THE SEARCH PURSUANT TO A WARRANT

The standard for reviewing whether an affidavit provides sufficient support to justify the issuance of a search warrant is as follows:

In determining the sufficiency of an affidavit, the Court considers whether the totality of the circumstances stated in the affidavit demonstrates probable cause to search the premises. The Court examines the affidavit in a practical, commonsense fashion and accord considerable deference to reasonable inferences the issuing justice may have drawn from the attested facts. Under the probable cause standard, the totality of the circumstances disclosed in the supporting affidavits must demonstrate a fair probability that contraband or evidence of a crime will be found in a particular place. In a doubtful or marginal case, the court defers to the issuing magistrate's determination of probable cause. *United States v. Barnard,* 299 F.3d 90, 93 (1st

Cir.2002) (citations and internal punctuation omitted).

  As written, the affidavits submitted in support of the Mr. Boyd's hotel room search would establish probable cause if the observations set forth in paragraph 16[1] of the search warrant (Exhibit "A") before the search warrant was obtained were included. But this piece of evidence should be not be considered. First, the search of the package was illegal. The police would not be determined if this information was suppressed. Second, once the Fed Ex package is removed, there is no further evidence that Mr. Boyd had any contraband in his room. In fact, in paragraph 15, it is clear that none was observed.

  There was no collateral or independent warrant pending. The police benefited from the illegal search in this warrant and used the illegal information to obtain the warrant. The warrant is not "independent" from the illegal taint. It cannot be excised and any evidence obtained as a result of this warrant is illegal and should be suppressed.

---

[1] Paragraph 16 states: "On December 31, 2004, law enforcement officers identified a Federal Express package at Logan Airport addressed to Mark Martin at the Nine Zero Hotel. Federal Express personnel opened the package and determined that it contained approximately 3 pounds of a substance recognized by law enforcement personnel to have the appearance of crystal methamphetamine."

III.  CONCLUSION

This is not a simple case of the police taking an erroneous sneak and peak while they were separately pursuing a warrant.  The illegal conduct is so inextricably interwoven with the search and arrest that it cannot be separated without totally eviscerating any reasonable 4th Amendment protections.  The controlled substance at issue in this case which make up the charges against Mr. Boyd is the substance that was the fruit of the illegal search.  If this Court were to yet graft another exception to just following the 4th Amendment, the 4th Amendment would be subject to further legal erosion and would real just be a nullity if this search were upheld.

Respectfully submitted,

/s Ronald N. Richards, Esq.
_____
Ronald Richards, Esq. SB#176246
Ronald Richards and Associates
P.O. Box 11480
Beverly Hills, CA 90213
310-556-1001 Office
310-277-3325 Fax

Peter Charles Horstmann, Esquire
BBO #556377
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley St., 16th Floor
Boston, Massachusetts 02116
(617) 859-9999

CERTIFICATE OF SERVICE

I, Peter Charles Horstmann, Esquire, hereby certify that on this 3rd day of October, 2005, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE was served electronically, upon Assistant United States Attorney Nancy Rue, One Courthouse Way, Boston, MA 02210.

Peter Charles Horstmann, Esquire

11