UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
UNITED STATES                 )
                              )
v.                            )
                              )   No. 05-10037-GAO
GRANT BOYD,                   )
     Defendant.               )
_____)

DEFENDANT'S REPLY MEMORANDUM TO GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

INTRODUCTION

Initially, the Government appears to argue that no request for oral argument has been made despite the scheduling of a hearing by the Court. The Government did not object to an oral argument at the scheduling hearing on October 12, 2005, at which it was clear to all Parties and the Court that the Defendant was seeking an oral argument. Due to an editing error, a formal request for ORAL ARGUMENT pursuant to local rule 7.1(d), was omitted from the original motion.

Pursuant to local rule 7.1(d), defendant Boyd hereby reasserts his request for an evidentiary hearing and oral argument. The defendant is at a loss as to why the government contends he has not met his burden. In this case, we have a warrantless search where the affidavit for the search of Mr. Boyd's hotel room unequivocally shows that there was a prior warrantless search of the package.

Furthermore, Mr. Boyd has automatic standing to contest the evidence that was in his hotel room where there is no factual dispute that he was the occupant and purchaser of the hotel room. Counsel for Mr. Boyd apologizes to the Court for any procedural omissions or errors. However, in the end, defendant's rights are about fairness and Mr. Boyd has overwhelmingly set forth more than just conjecture as to the efficacy of the search. The government has the burden

of proof of justifying the warrantless search. Due process requires a hearing so Mr. Boyd can show the search was conducted at the request of the police. The effort by the government to defeat the search without any affidavits or support justifying the Constitutional violations speaks volumes as to whether or not the Boston Police had a hand in the search at issue in this case.

An evidentiary hearing would assist the Court to find the truth and would allow the defendant basic due process to cross examine the government witnesses it must call in order for the government to meet its burden in justifying the warrantless search.

### DEFENDANT BOYD HAS AUTOMATIC STANDING

Whether a defendant has standing to contest the legality of a search presents a mixed question of fact and law. The district court's ultimate legal conclusion is reviewed de novo, and the findings of fact underlying that conclusion are reviewed for clear error. *United States v. Iglesias,* 881 F.2d 1519, 1522 (9th Cir.1989), *cert. denied,* 493 U.S. 1088 (1990). In *United States v. Salvucci,* 448 U.S. 83 (1980) (*Salvucci*), the Supreme Court abolished the rule of "automatic standing," whereby defendants charged with possessory crimes were entitled to challenge the legality of the search automatically. The Court held that evidence seized should be suppressed only if a defendant proves that his own Fourth Amendment rights were violated during the search. *Id.* at 85. The Court also reaffirmed the principle that, in order to challenge a search on Fourth Amendment grounds, a defendant bears the burden of demonstrating that he or she had a legitimate expectation of privacy in the place searched. *Id.* at 95; *see also Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980) (defendant has the burden of establishing that the search violated his legitimate expectation of privacy in a particular place); *United States v. Davis,* 932 F.2d 752, 756 (9th Cir.1991) (same).

The Court in *Salvucci* also addressed one of the rationales underlying the automatic standing rule: "the 'vice' of prosecutorial contradiction." 448 U.S. at 90. The rule of automatic standing was designed, in part, to prevent the government from maintaining self-contradictory positions, arguing for instance that a defendant possessed contraband for purposes of criminal liability but not for purposes of claiming Fourth Amendment protection. *See id.* at 88. In *Salvucci,* however, the Court recognized that a defendant in legal possession of an item does not necessarily have a legitimate expectation of privacy in the place from which the item is seized. *Id.* at 91. Thus, the Court concluded, "a prosecutor may, with legal consistency and legitimacy, assert that a defendant charged with possession of a seized item did not have a privacy interest violated in the course of the search and seizure." *Id.* at 88-89.

Although a prosecutor does not necessarily advance contradictory positions when attempting to refute standing and establish possession, courts have not read *Salvucci* to condone prosecutorial contradiction when it does occur. *See United States v. Bagley,* 772 F.2d 482 (9th Cir.1985) (*Bagley* ), *cert. denied,* 475 U.S. 1023; *United States v. Issacs,* 708 F.2d 1365 (9th Cir.) (*Issacs* ), *cert. denied,* 464 U.S. 852 (1983). As we stated in *Issacs:* "*Salvucci* does not permit the government to argue possession but deny expectation of privacy where the circumstances of the case make such positions necessarily inconsistent." 708 F.2d at 1368; *see also Bagley,* 772 F.2d at 489 ("[T]he government may not argue the facts both ways in order to defeat an expectation of privacy."). (See also *United States v. Singleton* 987 F.2d 1444, 1447 - 1448 (9th Cir.,1993).

In this case, the government is charging Mr. Boyd with possession. He had occupied the room where the substance at issue was recovered. The government in its affidavit contends it was his room. If necessary, Mr. Boyd will establish standing at the hearing but the government

3

cannot adopt a possession theory for prosecution and then apply an inconsistent theory to defeat standing.

### THE AFFIDAVIT MORE THAN DEFEATS THE CONJECTURE ISSUE

The government relies on *United States v. Koenig*, 856 F.2d 843 (7th Cir.1988). In that case, the Seventh Circuit addressed this issue with respect to a defendant's ability to challenge the seizure and search of a package in transit when the moving defendant was neither the sender nor the addressee of the package. In *Koenig,* the carrier was a private express courier, not the United States Postal Service. The private courier's employees had become suspicious about a package and had opened it. When they found what turned out to be cocaine, they contacted federal agents. 856 F.2d at 845.

Two defendants moved to suppress evidence from the package. The package had been addressed to defendant Koenig but more relevant for present purposes, defendant Graf was neither the sender nor the addressee. The Seventh Circuit held that Graf had not shown that he had any protected Fourth Amendment interest in the package.  On appeal, he failed to point to any other source of a personal privacy interest in Koenig's mail. *We need not decide whether a privacy interest could be recognized given proof of an ownership interest in the contents of the parcel and a showing of the ability to control the parcel once delivered.*   856 F.2d at 846 (emphasis added).  A wife, for example, might have a privacy interest in an envelope containing a life insurance policy covering both husband and wife that was sent to the household addressed to the husband. Graf failed to qualify for that sort of standing, however, because he failed to establish even a limited privacy interest in the package. *Graf never asserted that he was part owner of the drugs in transit.* To the contrary, he has consistently argued that he was never a part of the conspiracy to distribute, but only a frequent customer of Koenig. His position was that his

4

relationship with Koenig was no more than a buyer/seller, the mandatory implication being that he had no interest, title or control over the drugs Koenig obtained until such time as he had purchased them from her. Without a privacy interest in the package, Graf lacked standing to assert Fourth Amendment objections to the police conduct.

Both senders and addressees of packages or other closed containers can reasonably expect that the government will not open them. *See United States v. Jacobsen,* 683 F.2d 296, 298 n. 2 (8th Cir.1982), *rev'd on other grounds,* 466 U.S. 109 (1984); *United States v. Givens,* 733 F.2d 339, 341 (4th Cir.1984); *United States v. Richards,* 638 F.2d 765, 769-70 (5th Cir.1981). Of course, common carriers or other private parties do not violate the Fourth Amendment if they search the packages of others, whether or not they have authority to do so, since the amendment protects only against unreasonable governmental action.  See *Jacobsen,* 104 S.Ct. at 1656; *Walter v. United States,* 447 U.S. 649 (1980); *United States v. Koenig,* 856 F.2d 843, 847 (7th Cir.1988). In such cases, "[t]he arrival of police on the scene to confirm the presence of contraband and to determine what to do with it does not convert the private search into a government search subject to the Fourth Amendment." *Illinois v. Andreas,* 463 U.S. 765 (1983). But if government agents themselves are to open containers that are sent by mail or private carrier, the requirements of the Fourth Amendment must be satisfied. Therefore, even if government agents have probable cause to believe that there is contraband in a container sent by mail or common carrier, they generally cannot search it unless they first obtain a warrant, or unless some exception to the warrant requirement applies.  See also *Van Leeuwen,* 397 U.S. at 250-53, 90 S.Ct. at 1031-33 (upholding detention of mail while search warrant could be obtained).

In *United States. v. Villarreal* 963 F.2d 770, *774 -775 (5th Cir., 1992), the 5th Circuit suppressed an illegal search even though there was a fictitious name. In *Villarreal,* although the consignee of the drums was technically a fictitious person named Roland Martin, the Court held that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names. *See Richards,* 638 F.2d at 770; *see also United States v. Pierce,* 959 F.2d 1297, 1303 n. 11 (5th Cir.1992) (drawing a distinction between packages addressed to the "alter ego" of a defendant, and those addressed to individuals other than the defendant.) It is clear from the affidavit that Mark Martin was the alter ego of Boyd. This is enough under *Villareal.*

As the 7th Circuit recognized in *United States. v. Pitts*, 322 F.3d 449, *457 -458 (7th Cir.,2003) there are a number of legitimate reasons that a person might wish to send or receive a package using a *nom de plume.* Some authors and journalists, such as the incomparable Ann Landers, whose real name was Eppie Lederer, employ a pseudonym in their professional life. This is a common and unremarkable practice. In other situations, a celebrity may wish to avoid harassment or intrusion; a government official may have security concerns in using her real name or home address to receive mail; a business executive in merger talks might worry about potential investors misusing the information gained through the mail to manipulate the securities markets. *See United States v. Evans,* 2001 WL 243287, *5 (S.D. Ind. Jan 31, 2001), *aff'd,* 282 F.3d 451 (7th Cir.2002), *cert. denied,* 537 U.S. 918, 123 S.Ct. 304, 154 L.Ed.2d 204 (2002).

Indeed a sender of mail might wish to remain completely anonymous for any number of reasons. The Supreme Court has held that anonymity of an author is not a sufficient reason to exclude literary works or political advocacy from the protections of the First Amendment. *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 341-43, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995). As the Court noted there, an author may decide to remain anonymous for fear of

economic or official retaliation, out of concern for social ostracism, or merely because of a desire to preserve as much of one's privacy as possible. *McIntyre,* 514 U.S. at 341-42, 115 S.Ct. 1511. So too with the sender or receiver of mail.

Therefore, the absence of Mr. Boyd using his real name combined with the police's knowledge of his alter ego in conjunction with the charge of this case all come to one conclusion: There is a sufficient connection with Mr. Boyd to establish standing.

Alternatively, assuming *arguendo* that the Court disagrees with the foregoing analysis, Mr. Boyd is prepared to submit an affidavit regarding his ownership.

/s Ronald N. Richards, Esq.
_____
Ronald Richards and Associates
Ronald Richards, Esq. SB#176246
P.O. Box 11480
Beverly Hills, CA 90213
310-556-1001 Office
310-277-3325 Fax

CERTIFICATE OF SERVICE

I, Peter Charles Horstmann, Esquire, hereby certify that on this 8th day of November, 2005, a copy of the foregoing DEFENDANT'S REPLY MEMORANDUM TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE was served electronically, upon Assistant United States Attorney Nancy Rue, One Courthouse Way, Boston, MA 02210.

Peter Charles Horstmann, Esquire