UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 05-10037-GAO

UNITED STATES OF AMERICA

v.

GRANT BOYD,
Defendant

**MEMORANDUM AND ORDER**
February 8, 2006

O'TOOLE, D.J.

Grant Boyd is charged with one count of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He has moved to suppress evidence seized as the result of a search of his hotel room conducted pursuant to a warrant. In addition to describing a "controlled buy" of methamphetamine from Boyd by a confidential informant, the affidavit in support of the application for the warrant also disclosed that a package delivered to the hotel room contained a large quantity of methamphetamine. The reason agents knew of the contents of the package was that it had been earlier opened and its contents examined by security personnel at Federal Express ("FedEx"), the carrier via whose facilities the package had been shipped from California. Boyd asserts that the FedEx inspection of the package had been done at the insistence of the law enforcement officers investigating Boyd and it was thus a governmental search subject to the Fourth Amendment's requirements; that because the search had not been authorized by a warrant, it was presumptively unreasonable; and that the issuance of the later warrant was tainted by the affidavit's inclusion of information about the contents of the package only obtained by reason of the unlawful

FedEx search. Consequently, Boyd argues, the issuance of the warrant was not properly justified and the fruits of the search of the hotel room must be suppressed.

I.     Factual Findings

    A.  *The Affidavit*

The following facts appear from the affidavit submitted in support of the application for the search warrant:

At the time of the events at issue, Boyd was known to law enforcement personnel and was the target of an investigation by a joint FBI/DEA drug crime task force. At the end of 2004, agents arranged to have a "confidential informant" make contact with Boyd by telephone. On December 30, 2004, the informant made arrangements to meet Boyd at the Omni Parker Hotel in Boston to purchase from Boyd approximately one ounce of methamphetamine. The Omni Parker is nearby the Nine Zero Hotel, where Boyd was staying under the assumed name "Mark Martin." (The voice mail message on the phone the informant called to reach Boyd also identified the user as "Mark Martin.")

Police observed the two leave the Omni Parker, but visual surveillance was lost as they walked through downtown Boston. The informant later met with police officers and reported that Boyd had sold him a quantity of methamphetamine, which the informant gave to the police. The informant further said that the two had gone to Room 501 of the Nine Zero Hotel, where Boyd required the informant to strip to show that he was not "wired" and where they weighed the drugs on a drug-weighing scale in the room.

That same day, law enforcement officers interviewed personnel at the Nine Zero Hotel, who disclosed that a guest registered as Mark Martin had told them that he was expecting a package to be delivered and had asked that it be put in his room. The hotel employee(s) also said that Martin

had repeatedly asked about the package and had appeared nervous when he did so. Officers watching the hotel saw no package delivery to that location on December 30. However, while officers were at the hotel, they observed Boyd arrive and go to Room 501, which room was registered in the name of Mark Martin. Hotel personnel confirmed that Boyd was the person who had presented himself to them as Martin.

B. *The Evidentiary Hearing*

The police were interested in the package Boyd seemed to be waiting for. Testimony at the evidentiary hearing on the present motion was principally focused on that package and the inspection of its contents by FedEx personnel. I find the following facts concerning these matters based on my assessment of that testimony as well as the exhibits admitted in evidence.

In the afternoon of December 30, Massachusetts State Trooper Shawn Murray of the joint drug crime task force contacted FedEx and other shipping companies in the Boston area to see if there had been any packages delivered to the Nine Zero Hotel that day. The person Murray called at FedEx was an internal security officer named Joe Gulley. This was not the first time Murray had dealt with Gulley, nor the first time he had asked him to watch for a delivery to a particular address. Both Murray and Gulley were aware that carriers such as FedEx are often used by distributors of illegal drugs to deliver the contraband from one place to another. One of Gulley's responsibilities in his job as a security officer for FedEx is to be on the lookout for packages shipped via FedEx facilities that may contain contraband.

After conducting an inquiry, Gulley reported to Murray that the only delivery on December 30 to the Nine Zero Hotel had been a "letter type" package. Murray asked Gulley to keep an eye out for any packages that were to be delivered to the Nine Zero Hotel and to call him if there were any.

3

The next morning Gulley called Murray to say that, in response to an alert given to FedEx personnel, the route driver who made deliveries to the Nine Zero Hotel had brought him a package to be delivered there and that he, Gulley, had opened it. In its contract with persons shipping items through its facilities, FedEx reserves the right to open and inspect any package while it is in FedEx custody. Gulley testified that he looks for telltale signs that a package might be carrying contraband. In this case, he said the combination of the following factors led him to decide to open the package: (1) the package was heavily taped; (2) it had been shipped by a freight forwarding office in California; and (3) it was addressed to a hotel.

Gulley told Murray that the package contained a white powder. Murray went to the FedEx facility and looked at the opened package and its contents. It appeared to him that the package contained methamphetamine.

After Murray viewed the contents of the package, it was rewrapped and delivered to the Nine Zero Hotel. It was addressed to Mark Martin, who was identified on the label of the package as a guest at the hotel. The information gathered as a result of Gulley's interception and inspection of the package was included in the affidavit in support of the application to search Room 501 at the Nine Zero Hotel and was undoubtedly a significant part of the basis for the magistrate's determination to issue the warrant.

C.  *Conclusions*

I make the following specific conclusions based on the evidence considered:

Gulley would not have intercepted and inspected the contents of the package if Murray had not asked him to be on the lookout for a package to be delivered to the Nine Zero Hotel. In this respect, Murray's request was a "but for" cause of the inspection.

4

Murray did not specifically ask Gulley to open the package; Gulley determined to do so on his own. Gulley's inspection of the contents of the package was consistent with FedEx policy, and that policy serves the private interests of FedEx distinct from (albeit congruent with) the interests of law enforcement.

Gulley's decision to open and inspect the contents was not naive. Gulley formerly had served for about ten years as a municipal police officer (he has been a FedEx employee for the last 17 years), and he was familiar both with law enforcement investigative techniques and with Fourth Amendment principles of search and seizure. He also realized that Murray's interest in the package meant that the drug task force Murray was assigned to suspected that the package may contain contraband.

Both Murray and Gulley testified that there may have been "hundreds" of occasions on which Gulley had been asked by Murray or other law enforcement officers to keep an eye out for a package en route in FedEx custody from or to a particular place. Gulley testified that he sometimes inspected packages to which his attention was drawn by law enforcement officers, but there had also been times when he intercepted a package that had been "flagged" by law enforcement and decided not to open it, based on his own assessment of the appearance of the package. He estimated that when he did open a package in transit that had been "flagged," the package contained contraband about half the time. (In contrast, when he opened a package relying on his own assessment without any prompt from law enforcement, the frequency of finding contraband was 1 in 25.)

II.    <u>Legal Rulings</u>

    A.    *Boyd's Standing*

As a threshold matter, the government asserts that Boyd does not have standing to object to the FedEx "search" because the package was addressed to "Mark Martin," and Boyd has not affirmatively asserted that he is "Mark Martin." Without such an acknowledgment, the government argues, he has not shown that he had a legitimate expectation of privacy in its contents.

It is of course axiomatic that in order to challenge a search on Fourth Amendment grounds, a defendant must demonstrate that he had a legitimate expectation of privacy in the place or object searched. <u>See</u> <u>United States v. Salvucci</u>, 448 U.S. 83, 95 (1980); <u>United States v. Aguirre</u>, 839 F.2d 854, 856 (1st Cir. 1988). Generally, packages are entitled to protection under the Fourth Amendment. <u>See</u> <u>United States v. Jacobsen</u>, 466 U.S. 109, 114 (1984); <u>United States v. Van Leeuwen</u>, 397 U.S. 249, 251 (1970). However, a defendant typically must demonstrate his personal right of privacy by establishing that he was in possession of the package or that he was either the named sender or recipient of the package. <u>See</u> <u>United States v. Koenig</u>, 856 F.2d 843, 846 (7th Cir. 1988).

Although the First Circuit does not appear to have addressed this specific issue, cases from other circuits have ruled that a person does not lose his privacy interest in a package if he is the intended recipient but chooses to use a fictitious name. <u>See</u> <u>United States v. Villarreal</u>, 963 F.2d 770, 774-75 (5th Cir. 1992) (holding individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names); <u>United States v. Richards</u>, 638 F.2d 765, 770 (1981). <u>But see</u> <u>United States v. DiMaggio</u>, 744 F. Supp. 43, 46 (N.D.N.Y. 1990) (intended

6

recipient who has concealed his identity cannot assert a cognizable Fourth Amendment interest in the package while it is in transit because he has chosen not to announce to society that he has a legitimate claim to the contents of the sealed package).

In this case, agents knew Boyd was using the name "Mark Martin." He was registered under that name at the Nine Zero Hotel, and the phone by which he could be contacted used that name to identify the voice mail recipient. The government's objection that before moving to suppress the evidence he must affirm what agents knew is more formal than substantive. Such an affirmance is not necessary here where the alias was, as a matter of fact, notoriously known, any more than it would be were the package addressed to Boyd using some recognizable nickname (like "Scooter," for instance) instead of his formal name. Boyd has standing to move to suppress the evidence.

B.  *Validity of the FedEx Search*

Boyd does not dispute that if Gulley's inspection – or "search" – of the FedEx package addressed to Mark Martin at the Nine Zero Hotel was a "private" act, then it did not violate his Fourth Amendment rights. See Jacobsen, 466 U.S. at 113-115 & n.10; Burdeau v. McDowell, 256 U.S. 465, 475 (1921). However, if, as Boyd contends, Gulley was acting as an agent or instrument of the government when he opened the package, his inspection would be a "search" regulated by the Fourth Amendment. See Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971); Koenig, 856 F.2d at 847. Since the search was conducted without a warrant, it would be presumptively unreasonable, and conclusively unreasonable in this case, where no suggestion is made that any of the recognized exceptions to the warrant requirement pertain.

The police may not evade the requirements of the Fourth Amendment simply by recruiting a private party to conduct an unauthorized search on their behalf. On the other hand, the police need

not avoid seeking and accepting the cooperation of private citizens to provide what information those citizens may lawfully have access to. As the Court said in Coolidge, "[I]t is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals." 403 U.S. at 488.

In United States v. Pervaz, 118 F.3d 1 (1st Cir. 1997), the First Circuit surveyed the "tests" other circuits had devised for distinguishing cases where a private party is acting effectively as an "instrument" of the police (to use Coolidge's term, 403 U.S. at 487) from those where it is not, and concluded:

> We think that any specific 'standard' or 'test' is likely to be oversimplified or too general to be of help, and that all of the factors mentioned by the other circuits may be pertinent in different circumstances: the extent of the government's role in instigating or participating in the search, its intent and the degree of control it exercises over the search and the private party, and the extent to which the private party aims primarily to help the government or to serve its own interests.

Id. at 6.

In the present case, Gulley would not have taken note of the package addressed to the Nine Zero Hotel had Murray not suggested that he look for such a package. To this extent, as I have noted above, Murray's suggestion may be considered a "but for" cause of Gulley's subsequent opening of the package: but for the suggestion, the package would not have been found and opened. According to Pervaz, however, this elementary causal relationship is not enough by itself to justify, let alone require, a conclusion that the inspection should be characterized as a governmental, rather than a private, act. Id. More telling would be active governmental participation in the actual locating and physical opening of the package. Here there was none. The package was entirely within the custody of FedEx when it was found and opened.

8

Further, there was no evidence that Murray asked that the package be opened, if found. Rather, the only testimony was that the decision was entirely Gulley's. It is certainly true that both men understood that if Gulley found evidence of criminal activity, he would report it to Murray. However, the evidence does not justify the inference, and I do not draw it, that Gulley was simply acting as Murray's "instrument" rather than exercising his own judgment. Murray did not exercise control over Gulley's inspection of the package.

The evidence also established that FedEx has an independent private interest in reserving the right to inspect packages. A carrier such as FedEx has an obvious interest in not being a delivery system of choice for drug distributors. See United States v. Momoh, 427 F.3d 137, 142 (1st Cir. 2005) (taking note that carriers may have such an interest). It might be one thing if it appeared that such a private right to inspect packages was only exercised when law enforcement officers suggested it and not otherwise, but the evidence here was to the contrary: Gulley has often exercised the reserved right to inspect packages when no suggestion at all has been made by law enforcement personnel.

In sum, the agents did not direct or control Gulley's interception and inspection of the package. The decision to open the package was made by Gulley consistent with routine FedEx security procedures, and consistent as well with the notice to users of the FedEx delivery system that such inspections may be made. Gulley was not acting as an instrument or agent of the police, and his inspection was not a search to which the Fourth Amendment applies.

9

Accordingly, it was proper to include and rely on the information learned from Gulley's inspection of the package in the affidavit made in support of the application to search Room 501 at the Nine Zero Hotel, and the ensuing search pursuant to the issued warrant was lawful.

The defendant's motion to suppress the fruits of the search is DENIED.

February 8, 2006                                      \s\ George A. O'Toole, Jr.
DATE                                                          DISTRICT JUDGE