## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **United States of America,** | ) |
| | ) |
| **Plaintiff,** | ) CRIMINAL ACTION |
| | ) CASE NO.  05-10037-GAO |
| **v.** | ) |
| | ) |
| **Grand Boyd,** | ) |
| **Defendant.** | ) |
| | ) REQUEST FOR HEARING |

### MOTION TO DISMISS SUPERCEDING INDICTMENT BASED UPON VINDICTVE PROSECUTION AND INCORPORATED MEMORANDUM OF LAW

The defendant moves to this Court to dismiss the indictment based upon vindictive prosecution on the grounds that the superseding indictment is based upon facts known to the government at the timle of the original indictment.   Furthermore, the superseding indictment is based upon information, which the government learned through the proffer sessions.   This includes acts that extend 14 months into Mr. Boyd's incarceration and proffer sessions.

Grant Boyd was arrested on December 31, 2004.  Grant Boyd signed a proffer agreement on January 4, 2005.  He attended multiple proffer sessions.  The government superseded and added additional defendants based upon his debriefings.  The affidavit of Denise Bien attached as Exhibit "A," paragraphs, 6-19, clearly show that all of the information used by the government for the superseding indictment was available at the time of the original indictment.  Furthermore, the government used the defendant's own proffer statements for this new indictment, violating the proffer agreement.  Finally, the government is currently charging the defendant in a conspiracy through March 31, 2006.  The defendant has cooperated with the government since January 4, 2005.

1

The government cannot charge one of its own agents with a conspiracy that covers the same period the defendant was in custody cooperating with the government.

## **APPLICABLE LAW**

"A prosecutor may seek a superseding indictment at any time prior to a trial on the merits," *(United States v. Cole,* 755 F.2d 748, 757 (11th Cir.1985); *United States v. Del Vecchio,* 707 F.2d 1214, 1216 (11th Cir.1983)), so long as the purpose is not to harass the defendant, *(United States v. Edwards,* 777 F.2d 644, 649 (11th Cir.1985).) As a general rule, as long as the prosecutor has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute. *(Cole,* 755 F.2d at 758; *United States v. Spence,* 719 F.2d 358, 361 (11th Cir.1983).) However, a superseding indictment adding new charges that increase the potential penalty would violate due process if the prosecutor obtained the new charges out of vindictiveness. *(Spence,* 719 F.2d at 361.) Vindictiveness in this context means the desire to punish a person for exercising his rights. (*United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, (1982), *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir.2006).)

In this case, the defendant is being punished for pursuing the 4th Amendment theory. The Due Process Clause forbids the government from prosecuting a greater offense where there is a reasonable likelihood of retaliation for a defendant's exercise of statutory or constitutional rights, but leaves the prosecution "wholly free" to pursue the original charge. *(Blackledge v. Perry,* 417 U.S. 21, 28-29, 31 n. 8, 94 S.Ct. 2098, (1974); *accord United States v. Hollywood Motor Co.,* 646 F.2d 384, 388-89 (9th

Cir.1981) (holding that dismissal of added charges did not preclude prosecution on

original charges), *rev'd on other grounds,* 458 U.S. 263, 102 S.Ct. 3081, (1982); *see*

*also United States v. Castiglione,* 876 F.2d 73, 76 (9th Cir.1989) (See *United States. v.*

*Becerra* 435 F.3d 931, 936 (8th Cir.,2006).)

    In this case, the government is free to pursue the original indictment, but this

indictment cannot stand as a matter of law, it includes a 14 month window where it was

legally impossible for Grant Boyd to be involved in a conspiracy with these other

defendants.

                        Respectfully submitted,

                        /s Ronald N. Richards, Esq.
                        Ronald Richards and Associates
                        P.O. Box 11480
                        310-556-1001 Office

\                       310-277-3325 Fax

                        Peter Charles Horstmann, Esquire
                        BBO #556377
                        PARTRIDGE, ANKNER & HORSTMANN, LLP
                        200 Berkeley Street
                        Boston, Massachusetts 02116
                        (617) 859-9999

### CERTIFICATE OF SERVICE

    I, Peter Charles Horstmann, Esquire hereby certify that this 9th Day of October, 2006, I
served a copy of the foregoing motion on Nancy Rue, Assistant United States Attorney, Office of
the United States Attorney, Suite 900, 1 Courthouse Way, Boston, MA 02110.

                        _____
                        Peter Charles Horstmann, Esquire

Review # 6 - 19

FACTS KNOWN BEFORE 3/2006
Original Indictment & Supports my
Vindictive Prosecution motion

## AFFIDAVIT OF SPECIAL AGENT DENISE E. BIEHN
## IN SUPPORT OF SEARCH WARRANTS

I, Denise E. Biehn, being duly sworn, depose and state as follows:

## I.   INTRODUCTION

1.   I am a special agent employed by the Federal Bureau of Investigation (FBI) and have been so since June 2003. My current assignment is as a special agent on a FBI drug squad assigned to the Boston, Massachusetts office. During my career, I have participated in numerous cases involving the possession, distribution, importation and manufacturing of controlled substances. Those investigations have included the following investigative techniques: electronic surveillance (wiretap), utilization of confidential sources, surveillance of persons involved in the possession, distribution, importation and manufacturing of controlled substances, the execution of arrest warrants, and the execution of search warrants connected with the possession, distribution, importation and manufacturing of controlled substances, including heroin, cocaine, OxyContin, MDMA (ecstasy), and methamphetamine. I have attended the FBI Academy in Quantico, Virginia and have attended seminars designed to acquaint and train law enforcement personnel with the methods used by criminal organizations to possess, distribute, import and

1

manufacture controlled substances, including methods used to receive and disperse proceeds generated by the distribution of controlled substances. As a result of my training and experience I have become familiar with the methods used by criminal organizations to carry on the business of the distribution of controlled substances, money laundering and financial manipulation of drug proceeds obtained from the distribution of controlled substances.

2.     I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. Section 2510(7). I am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. Section 2516.

3.     This Affidavit is submitted in support of search warrants for locations associated with Jose Ruvalcaba, where Ruvalcaba is likely to store or conceal documents associated with or proceeds from his illegal activities. Those locations include:

a.     Jose Ruvalcaba's mailing address, 3211 Pyrites Street, Los Angeles California ("the Pyrites location")

b.     Jose Ruvalcaba's actual residence, 4145 Compton Court, Chino California (hereinafter "the Compton location")

c.     Dynamic Silkscreen, 4398 South Huntington Drive, Los Angeles, Calfornia (hereinafter "Dynamic Silkscreen")

2

0000001613

d.   Safe Deposit Box R1616, at Branch 160, Bank of America, 160 E. Main Street, Alhambra, California (hereinafter "the safe deposit box")

e.   Yellow 1974 Chevrolet Blazer, California license plate 828SAH, registered to Jose Ruvalcaba, 3211 Pyrites Street, Los Angeles, California (hereinafter "the Blazer")

f.   Black 2004 Ford Expedition, California license plate 5JMC607, registered to Jose/Alma Ruvalcaba, 3211 Pyrites Street, Los Angeles, California (hereinafter "the Expedition") (collectively "the subject locations and vehicles")

4.   The information in this affidavit is based upon my personal participation in this investigation; my familiarity with reports made to me by other law enforcement agents and other concerned parties; my interviews of witnesses and confidential informants; my participation in surveillance that have been conducted in connection with this investigation; and other information collected to date as part of this investigation.   I am therefore familiar with the facts and circumstances of the individuals and federal controlled substance offenses and money laundering offenses described in this affidavit.   This affidavit does not, however, set forth every fact that I know about this investigation, but simply those facts that I believe are sufficient to show the probable cause necessary for the issuance

3

of the requested search warrants.  This affidavit describes the

results of an investigation by the DEA and FBI regarding the

criminal activities of Jose Ruvalcaba, Grant Boyd, Mark Butler,

and James Holyoke.  Boyd, Butler and Holyoke have been indicted

for money laundering, in violation of Title 18 U.S.C. 1956, and

drug trafficking, in violation of Title 21 U.S.C. 841.

5.     To summarize the results of this investigation – which

are discussed in more detail below – I have probable cause to

believe that since 2004, Ruvalcaba and others have been involved

in a conspiracy to distribute methamphetamine.  Subsequently, the

proceeds from the sale of these drugs have been laundered through

a Bank of America deposit account.

II.   **SUMMARY OF INVESTIGATION**

Seizure of Drugs and Documents from Grant Boyd on
December 31, 2004

6.     Grant Boyd was arrested in Boston on December 31, 2004,

after accepting a controlled delivery in a hotel room of a

package shipped via Federal Express from Alhambra, California,

containing 902.6 grams of 66% pure methamphetamine.

7.     A search warrant executed on Boyd's hotel room revealed

pay/owe ledgers that reflected moneys due to "JR" as well as

moneys owed by "Butler" [Mark Butler] and "James Holyoke"; a fax

to Bank of America regarding a missing deposit made by Boyd in

4

0000001615

the amount of $6,200 into a Bank of America bank account
0160207936 in the name of Dynamic MultiMedia, which is owned by
Jose Ruvalcaba ("the Account," or "the Dynamic MultiMedia
Account"); and notations regarding the same account number and
the address 160 E. Main Street, Alhambra, California, Branch 160,
which is the branch where Jose Ruvalcaba opened that bank
account.

8.    Bank records show that Boyd deposited money into this
account numerous times from September 2004 through December 2004,
in his own name or through a power of attorney he had over
another account.

9.    The search also revealed multiple express mail receipts
to Jose Ruvalcaba's home address at the time that was located in
Chino, California (the Compton location), including one package
listing Jose Ruvalcaba's telephone number, and another package
labeled to the Arriga Family at the Chino, California address,
along with a handwritten notation of Joe Ruvalcaba c/o Arraiga
Family at the Chino, California address; a Federal Express
invoice from Boyd's address to Joe Ruvalcaba in care of a
California UPS Store; and a handwritten note: "money laundering
legal in Panama, Monaco, Lebanon."

10.    Also recovered in the search was paraphernalia for the
use and distribution of methamphetamine, including baggies, a

5

scale, glass pipes, and blow torches, and notes related to methamphetamine distribution, including conversions of weight quantities between English and metric units such as: "16 oz in a pound," "8 ball 3.5 grams," and notes assigning monetary values to certain quantities, such as: "28 g = oz = 2k - 2400," "3.5 g = 8 ball 1/8 oz  400 - 600."  The search also revealed handwritten notes explicitly referring to drugs, such as "10 pills,  2 8s coke, 2 8x crystal meth."

11.  In addition to the above materials, Boyd also had in his possession a false California driver's license in the name of Mark Martin, bearing Boyd's photograph.

Seizure of Drugs and Documents and Drugs from
James Holyoke in June 2005

12.  James Holyoke was arrested in Boston in June 2005 after a package containing more than 500 grams of methamphetamine was delivered to a MailBoxes Etc mailbox that Holyoke rented.  Bryan Ouellette picked up the package on June 10, 2005, and was approached by law enforcement officers.  Ouellette agreed to assist law enforcement in making a controlled delivery of the package, and made a consensually monitored telephone call to James Holyoke.  In that telephone call, Holyoke directed Ouellette to bring the package to a hotel room that he had rented under the alias of Ramond Kevorkian.  Ouellette instead delivered the package to an associate of Holyoke's outside the hotel, and

6

then sent a message to Holyoke, tipping him off about the
investigation.

13. Holyoke fled the hotel, and law enforcement obtained a
search warrant on his abandoned hotel room. The search recovered
$20,000 in cash, a ditty bag containing drug paraphernalia, a
false California Driver's License in the name of Ramond Kevorkian
bearing Holyoke's photograph, and approximately 35 grams of
methamphetamine.

14. Law enforcement also searched the trash of a room
occupied by Holyoke the prior night and located pay/owe ledgers,
which included a balance owed to "Diablo" of $5,000. The hotel
search also produced documents including a wire transfer to the
Dynamic MultiMedia Account in the amount of $13,000.

15. Bryan Ouellette was arrested and agreed to speak to law
enforcement. Ouellette told law enforcement that he lived with
Grant Boyd in 2004, and then lived with Holyoke in the summer of
2005. He reported that both Boyd and Holyoke were drug dealers,
with both dealing in methamphetamine, and Holyoke dealing in
other drugs as well.

16. Ouellette stated that Holyoke frequently talked about
Diablo, and that Diablo was a methamphetamine supplier.
Ouellette stated that Diablo was also known as "Joe." He
reported that he had first met Diablo when Diablo visited Grant

7

0000001618

Boyd in the fall of 2004, and Boyd (who was then subject to electronic monitoring) asked Ouellette to pick Diablo up at the airport. Ouellette refused to pick Diablo up, and Boyd instead had Mark Butler pick Diablo up. Ouellette reported that Boyd had told Ouellette that Diablo was a friend from work, and that Boyd sold drugs for a living. Ouellette asserted that Boyd told him that "it comes in the equipment," referring to Federal Express packages that Boyd received at various addresses.

17. Ouellette asserted that Diablo had been a methamphetamine supplier for both Boyd and Holyoke. However, Ouellette stated that Holyoke had recently adopted another methamphetamine supplier. Ouellette asserted that Holyoke believed that Diablo was helping Boyd to pay his legal fees and that Diablo had increased his prices to subsidize Boyd's legal expenses, and that Holyoke owed Diablo $30,000. Ouellette stated that Diablo/Joe was in Boston on June 9, 2005, the day before he picked up the box from the mail drop, and that he had stayed at the Colonnade Hotel in Boston.

18. Hotel registration records and surveillance photos from the Colonnade Hotel in Boston show that Jose Ruvalcaba was registered at and present at the Colonnade from June 6 through June 7, 2005.

19. Ouellette told law enforcement that Diablo had a

0000001619

company called Dynamic MultiMedia that was a front for his drug
business.  Ouellette reported that he had made deposits into the
Dynamic MultiMedia Account for Holyoke.  He stated that Holyoke
deposited money into the Account multiple times per week and that
Holyoke spread the money out over multiple branches.  Bank of
America surveillance tapes of deposits into the Account show
Holyoke and Ouellette each making deposits into the Account   *Money Laundering*
during the period February 1, 2005 through April 30, 2005.

### Seizure of Documents, Drugs, and Text Messages from Mark Butler

20.  Mark E. Butler was arrested by the Eastham
Massachusetts Police Department on September 15, 2005 on motor
vehicle and drug charges after being stopped for speeding.
During the inventory of his vehicle and effects pursuant to the
arrest, police found methamphetamine and multiple false
California driver's licenses.  These licenses (two in his true
name, and one in the name "Daniel Riste") showed that his
residence was located in Alhambra, California.

21.  Butler defaulted on his court appearances related to
the Eastham arrest and was subsequently arrested on a warrant for
failure to appear at approximately 7:30 p.m. on February 9, 2006
at his home at 1187 Dorchester Avenue in Boston, Massachusetts.
During that arrest, officers smelled an odor.  Butler told the
officers that the odor was crystal meth, understood to refer to

0000001620