UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CASE NO. 05CR10037GAO |
| v. ) | |
| ) | |
| GRANT BOYD ) | |

**DEFENDANT'S SENTENCING MEMORANDUM
AND INCORPORATED MOTION FOR VARIANCE FROM
THE SENTENCING GUIDELINES PURSUANT TO 18 U.S.C. § 3553**

NOW COMES the Defendant, Grant Boyd, through counsel, and hereby submits the instant Memorandum in opposition to the Guideline calculations set forth in the PSR and alternatively moves this Honorable Court for a deviation or variance from the otherwise applicable Guideline range both as recommended by the Probation Department and/or from the Defendant's final Guideline Sentence as determined by the Court pursuant to §3553. It is not clear to the undersigned counsel, in light of *Booker v. United States*, 543 U.S. 220 (2005), whether a formal motion for downward departure[1] is still required or whether a motion for a variance or deviation is required given the advisory status of the Guidelines. However, in an abundance of caution and for the purpose of notifying the Government of intended sentencing arguments, I am filing the instant memorandum on behalf of Mr. Boyd. Assuming the Court does not agree with the Defendant's Guideline Calculations, the Court is respectfully urged to consider them in imposing sentence under 18 U.S.C. § 3553.

---

[1] Under the terms of the Plea Agreement the Defendant agreed that there was no basis for a departure and no such motion is made herein. However, because the existing case law contains more references to departure based decisions, they are included herein for the Court's consideration of any variance under §3553.

1

In support thereof, counsel states the following:

1. **The PSR's Assessment of a 2 Level Adjustment Pursuant to §2S1.1 is Erroneous**

It is settled that Grant Boyd has been incarcerated since December 31, 2004, and unable to engage in money laundering activity. It is also settled that 90% of the money laundering activity took place after Grant Boyd was incarcerated or without his involvement. It is settled that the Plea Agreement does not call for an adjustment pursuant to §2S1.1. Yet the PSR claiming greater knowledge of Boyd's role in the offense seeks to further penalize Boyd for the extremely minor role he played in the money laundering by increasing his offense level pursuant to §2S1.1. As a result, this Court is squarely confronted with one of the Guideline Commission's more confusing amendments.

On November 1, 2001, the money laundering Guidelines were amended for the stated purpose of more adequately reflecting the serious nature of money laundering activities. *Appendix C, Guidelines Manual, §2S1.1.* Prior to November 1, 2001, money laundering convictions were subjected to a "grouping" analysis under §3D1.1. As a result, in cases involving serious drug crimes, money laundering was often not counted in the base offense level because the base offense level for the underlying offense was significantly greater than the money laundering offense. *U.S.S.G. §3D1.1.* To solve this perceived dilemma, the Guidelines Committee determined that sentences would be enhanced for money laundering activities where the base offense level could be reasonably established under §2S1.1(a)(1).

The problem with the Committee's logic is that every defendant now nreceives the same increase regardless of their role or the amount of money involved. This is the problem in this case because the money laundering activity as it related to Grant Boyd was so insignificant that the Parties did not address it in the Plea Agreement. As a result, under the PSR Boyd is facing a

2

possible 37 month increase in his sentence for conduct which if charged separately would only have resulted in a 15-21 month sentence. According to the PSR, Boyd receives the same increase for his role as the other defendants who are responsible for laundering 10 times as much money. This result cannot have been the intent of the Committee. In fact, the "grouping" calculation for money laundering which existed prior to November 1, 2001, would have screened the money laundering conduct in this case out of the offense level calculation altogether. This result would have been far more equitable under the circumstances.

In stark contrast to Boyd's money laundering activities stands the principle charge of conviction, conspiracy to distribute methamphetamine for which he will be sentenced at the second highest Guideline offense level under §2D1.1 (Level 36). Notwithstanding the mandatory minimum sentence the Court must impose in this case, Boyd would receive a severe sentence under the Guidelines of 151-188 months for the methamphetamine. (This includes a 3 level reduction for acceptance of responsibility). To increase Boyd's base offense level by two levels for a relatively minor offense makes no logical sense and is neither just nor fair.

  **2.  Alternatively, Boyd Should Be Awarded A Variance for the Minor Role He Played in the Money Laundering**

If indeed Boyd is properly sentenced under §2S1.1, then he should be entitled to a minor role adjustment pursuant to §3B1.2 for the minor role he played in the money laundering conspiracy. As discussed above, only 10% of the money laundered is directly attributable to Boyd. More importantly, this is not a situation in which Boyd was ready willing and aboe to assist in the money laundering after December 31, 2004, when 90% of the activities took place, because he was incarcerated. As a result, because his sentence is being enhanced solely for the money laundering conviction, it should be reduced for his minor role. Indeed, it would be patently unfair as the Probation Department contends for Boyd to receive the same two level

adjustment as his co-defendants when he did not take part in 90% of the money laundering activities.

### 3. At a Minimum a Variance from The Guideline Range is Necessary to Correct the Inequity Created by §2S1.1

Other courts have departed where the Defendant's money laundering conduct was outside the heartland of the Guidelines. Most important of these decisions is *United States v. Walters*, 87 F.3d 663 (5th Cir. 1996), where the court recognized a departure from the money laundering Guidelines where the Defendant did not receive a personal benefit from the activity. In the instant case, the funds were deposited in to a bank account controlled by another defendant over whom Boyd had no control. Boyd also had no control of the account or the business it was listed under. Once the funds left Boyd's possession they belonged to the co-defendant and were no longer available to Boyd.

Alternatively, the Fifth Circuit found that where the funds were incidental to the defendant's gambling activities the money was never used to further other illegal activities. *United States v. Threadgill,* 172 F.3d 357 (5th Cir. 1999). Here, Boyd pleaded guilty to conduct in which he is alleged to have purchased drugs from California and the bank account into which the funds were being deposited was allegedly for a co-defendants business in California. The California co-defendant would ship the drugs to Boyd. It is certain that the funds being deposited in the bank account were for the purchase of drugs and not the proceeds of drug sales. Therefore, like *Threadgill,* Boyd's funds were incidental to the purchase of drugs and not being used for other criminal activity.

Whether the Court adopts the reasoning of *Walter* or *Threadgill,* the impact would be the same on Boyd. The Court could properly conclude under Walter that Boyd received no benefit from the funds. Alternatively, the Court could conclude that Boyd expected something in return

4

for the deposit that being a shipment of drugs in which case the deposit would have been incidental to the transaction as set recognized in *Threadgill.*

      At a minimum, the PSR seeks to punish Boyd for conduct which was undertaken by others while he was in jail awaiting trial. This situation is clearly not contemplated by the Guidelines. Although pleaded guilty to a conspiracy that the Government alleged existed prior to the time he went to jail and following the period of time he was in jail. This does not mean that he should be penalized for every act of the conspiracy while he was in jail.

      4.     The Defendant is also suffering from a terminal illness which will probably lead to his death while he is incarcerated. This is a factor the Court may consider under § 3553.

      5.     A combination of the above factors may constitute a separate basis for departure or the variance requested herein. *Koon v. United States*, 518 U.S. 81, 113-14 (1996); *United States v. Sklar*, 920 F.2d 107, 117 (1st Cir. 1990).

WHEREFORE, based upon the foregoing arguments and authorities, this Honorable Court is respectfully urged to impose a sentence determined under the Sentencing Guidelines that does not include an enhancement under §2S1.1.  The Defendant is requesting a sentence of 151 months.

Respectfully submitted,

Peter Charles Horstmann, Esquire
BBO #556377
PARTRIDGE, ANKNER & HORSTMANN, LLP
200 Berkeley Street, 16th Floor
Boston, Massachusetts 02116
(617) 859-9999

**CERTIFICATE OF SERVICE**

I, Peter Charles Horstmann, Esquire, hereby certify that on this 1st day of July, 2007, a copy of the foregoing motion was served electronically, upon Nathaniel R. Mendell, Assistant United States Attorney, United States Attorneys Office, One Courthouse Way, Boston, MA 02210.

Peter Charles Horstmann, Esquire