UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 05-10037-GAO |
| ) | |
| GRANT BOYD, ) | |
| ) | |
| Defendant. ) | |

### GOVERNMENT'S CALCULATION OF DRUG WEIGHT
### ATTRIBUTABLE TO DEFENDANT GRANT BOYD

The United States of America, by Assistant U.S. Attorney Nathaniel R. Mendell, hereby files this memorandum setting forth the government's calculation of drug weight attributable to defendant Grant Boyd. This memorandum does not advocate a change in the base offense level, which is agreed to by the parties, and set forth in the Plea Agreement and the Presentence Report ("PSR").

### BACKGROUND

In sentencing co-defendant Mark Butler, the Court calculated the drug weight attributable to the co-defendant by extrapolating from known conduct, rather than relying solely on the weight of drugs found in the co-defendant's possession at or around the time of arrest. This method of calculation was deemed the most accurate of those available, and its application resulted in a two-level increase in co-defendant Mark Butler's base offense level.

With the Court's methodology in mind, the government set out to determine a conservative and accurate method of estimating the drug weight attributable to Boyd. That method is set forth below. Significantly, the resulting calculation does not change Boyd's base offense level.

**BASIS FOR CALCULATION OF DRUG WEIGHT**

The drug weight set forth in ¶ 39 of the PSR for Boyd was calculated on the basis of the amount of methamphetamine (1) sold by Boyd on December 30, 2004; (2) received by Boyd by mail on December 31, 2004; and (3) seized from Boyd's hotel room on December 31, 2004. Small amounts of MDMA (Ecstasy) seized from Boyd's hotel room on December 31, 2004, were also included in the calculation. The resulting base offense level based on these drug amounts is 36.[1]

The method used in the PSR takes into consideration neither bank deposits made by Boyd as part of the charged conspiracy, nor shipments back and forth between Ruvalcaba and Boyd. (These shipments consisted of bulk methamphetamine sent from Ruvalcaba to Boyd, and bulk cash payments from Boyd to Ruvalcaba.) When bank deposits and shipping records are used to estimate the additional amount of methamphetamine Boyd received, an additional 3.46 kilograms of methamphetamine are attributable to Boyd. As set forth below, even taking into account these additional kilograms, the base offense level for Boyd remains level 36.

**Bank deposits**

The government believes that Boyd made or directed bank deposits totaling approximately $57,800 into accounts controlled by Ruvalcaba. These deposits correspond to an additional 2.1 kilograms of methamphetamine. (This calculation is based on a price of $12,500 per pound for methamphetamine, or $27,500 per kilogram.)

---

[1] The marijuana equivalent of these drugs is 12,585.3 kilograms. See PSR at ¶ 40. Pursuant to U.S.S.G. § 2D1.1(c)(2), the range for level 36 is at least 10,000 kilograms, but less than 30,000 kilograms of marijuana.

**Shipping records**

From September to December, 2004, at least three packages were sent from Ruvalcaba to Boyd. Based on evidence collected during the investigation, Ruvalcaba sold methamphetamine to Boyd in one-pound increments. Assuming that each of the three packages sent to Boyd contained one pound of methamphetamine, the total would be an additional 1.36 kilograms.

During the same time period, at least ten packages were sent from Boyd to Ruvalcaba. The government estimates that each of these packages contained at least $5,000 in payment for methamphetamine, or a total of at least $50,000. This payment corresponds to approximately 1.8 kilograms of methamphetamine.

An estimate based on packages sent by Boyd plus packages sent by Ruvalcaba would raise issues of double-counting. (Presumably, at least some of the money mailed by Boyd was payment for at least some of the methamphetamine mailed by Ruvalcaba.) Thus, it is better to choose a method of estimation based on either packages sent by Boyd or by Ruvalcaba. The government believes that a calculation based on the number of packages sent by Boyd gives a more accurate estimate of the total drug amount attributable to Boyd, because Ruvalcaba delivered methamphetamine to Boyd both by mail and in person.

On the basis of the number of shipments from Boyd to Ruvalcaba, an additional 1.8 kilograms of methamphetamine is attributable to Boyd.

**TOTAL AMOUNT ATTRIBUTABLE TO BOYD**

As set forth in ¶ 41 of the PSR, the seizures in December, 2004, result in a total equivalent drug weight of 12,585.3 kilograms. An estimate based on bank deposits and shipping records yields an additional 3.9 kilograms of methamphetamine attributable to Boyd. This additional amount is

equivalent to 7,800 kilograms of marijuana. Thus, the total amount attributable to Boyd is 20,385.3 kilograms of marijuana. As set forth above and in U.S.S.G. § 2D1.1(c)(2), the amount attributable to Boyd remains between 10,000 and 30,000 kilograms, and the base offense level is 36.

## **CONCLUSION**

For the reasons set forth above, the most accurate method of estimation yields a total drug weight of 19,505.3 kilograms of marijuana and a base offense level of 36.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Nathaniel R. Mendell
NATHANIEL R. MENDELL
Assistant U.S. Attorney

United States Courthouse
1 Courthouse Way
Suite 9200
Boston, MA 02210
(617) 748-3304
